## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | ) Chapter 11 |
| | ) |
| DEX ONE CORPORATION, et al.,[1] | ) Case No. 13-10533 ([___]) |
| | ) |
| Debtors. | ) (Joint Administration Requested) |
| | ) |

## APPLICATION OF DEX ONE CORPORATION, ET AL. FOR ENTRY OF AN ORDER PURSUANT TO 28 U.S.C. § 156(C) APPROVING THE RETENTION AND APPOINTMENT OF EPIQ BANKRUPTCY SOLUTIONS, LLC AS THE CLAIMS AND NOTICING AGENT TO THE DEBTORS, EFFECTIVE NUNC PRO TUNC TO THE PETITION DATE

The above-captioned debtors (collectively, the "Debtors" or "Dex One") file this application (the "Application") for entry of an order, substantially in the form attached hereto as Exhibit A (the "Order"), approving the services agreement (the "Services Agreement") between the Debtors and Epiq Bankruptcy Solutions, LLC ("Epiq") and the Debtors' retention and employment of Epiq as claims and noticing agent (the "Claims and Noticing Agent") for the Debtors in lieu of the Clerk (the "Clerk") of the United States Bankruptcy Court for the District of Delaware (the "Court") and for related relief, effective nunc pro tunc to March 18, 2013 (the "Petition Date"). In support of this Application, the Debtors rely on the declaration of Jennifer M. Meyerowitz, Esq. (the "Meyerowitz Declaration"), attached hereto as Exhibit B and incorporated herein by reference. In further support of the Application, the Debtors respectfully state as follows:

---

[1] The Debtors, together with the last four digits of each of the Debtors' federal tax identification number, are: Dex One Corporation (0040); Dex Media, Inc. (9762); Dex Media East, Inc. (5763); Dex Media West, Inc. (7004); Dex Media Service LLC (9647); Dex One Digital, Inc. (9750); Dex One Service, Inc. (0222); R.H. Donnelley Inc. (7635); R.H. Donnelley APIL, Inc. (6495); R.H. Donnelley Corporation (2490); Newdex, Inc. (1335); and Spruce Acquisition Sub, Inc. (4006). For the purpose of these chapter 11 cases, the service address for the Debtors is: 1001 Winstead Drive, Cary, North Carolina 27513.

## Jurisdiction

1.      The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, dated February 29, 2012.  This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2), and the Court may enter a final order consistent with Article III of the United States Constitution.

2.      Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

3.      The statutory bases for the relief requested herein are section 156(c) of title 28 of the United States Code (the "Judicial Code"), section 105(a) of title 11 of the United States Code, 11 U.S.C. §§ 101–1532 (the "Bankruptcy Code"), Rule 2002-1(f) of the Local Rules of Bankruptcy Practice and Procedure of the United Stated Bankruptcy Court for the District of Delaware (the "Local Rules"), and the Court's *Protocol for the Employment of Claims and Noticing Agents under 28 U.S.C. § 156(c)*, instituted by the Clerk on February 1, 2012 (the "Claims Agent Protocol").

## Relief Requested

4.      The Debtors seek entry of the Order approving the Services Agreement and the Debtors' retention of Epiq as Claims and Noticing Agent for the Debtors in these chapter 11 cases pursuant to the Services Agreement, which is attached hereto as Exhibit C and incorporated herein by reference, effective nunc pro tunc to the Petition Date.

## Business Overview

5.      Dex One, headquartered in Cary, North Carolina and employing about 2,200 people across the United States, is a leading provider of marketing solutions that help local businesses and consumers connect with each other.  The company's marketing consultants

provide essential services, advice, and value to local businesses to help them thrive in an increasingly fragmented marketing landscape. Specifically, Dex One's portfolio of marketing solutions includes: print directories, search engine optimization, website and mobile site design, individualized directory placement, online reputation management, custom-created digital display advertising, and in-depth reports on customers' marketing programs.

6.      In recent years, Dex One has experienced growth in its digital product and service revenues. These revenues, in aggregate, increased from $146 million to $229 million, or by 57%, for fiscal year 2012 over fiscal year 2011. While digital revenues are anticipated to continue to grow over time, such revenues currently represent only about 18% of Dex One's total revenues. Moreover, consumers' shift away from traditional print media and macroeconomic factors have negatively impacted Dex One's overall operating performance. Dex One's adjusted EBITDA decreased from $634 million to $561 million, or by 12%, for fiscal year 2012 over fiscal year 2011. Also, as of the Petition Date, the book value of Dex One's assets totaled approximately $2.7 billion and its liabilities totaled approximately $2.7 billion.[2] Dex One must restructure its balance sheet and reduce operating costs to maintain long-term operations.

### The Restructuring

7.      Prior to the Petition Date, Dex One engaged in significant negotiations with both SuperMedia, Inc. (together with its subsidiaries, "SuperMedia") and Dex One's senior secured lenders under its three separate secured credit facilities. Specifically, Dex One engaged in nine months of discussions with SuperMedia that ultimately resulted in Dex One and SuperMedia signing a merger agreement on August 20, 2012 (the "Merger Agreement"). The Merger Agreement provides for a stock-for-stock merger (the "Merger") to improve the companies'

---

[2]    For more information regarding Dex One's history, operations, and financial performance, see the *Declaration of Mark W. Hianik in Support of First Day Motions*, filed concurrently with this motion.

operating cash position.  Dex One estimates that the Merger will generate between $150 million and $175 million of annual run rate cost synergies by 2015.  Additionally, Dex One expects its current and future tax attributes, estimated at approximately $1.0 billion, to inure to the benefit of the combined company over time.

8.      Also, Dex One negotiated for over 18 months with its secured lenders to agree to amended and restated senior secured credit facilities (collectively, the "Amendments").[3] Consummating the Amendments is a condition precedent to closing the Merger.  The Amendments, among other things, will extend the maturity of Dex One's senior secured debt until the end of 2016 and will otherwise improve Dex One's ability to service and pay down its indebtedness.  Dex One anticipates that these transactions will position and stabilize the combined company so that it may have the runway to increase sales of profitable products and services and phase out unprofitable products and services.

9.      On December 5, 2012, Dex One and a group of unaffiliated senior secured lenders comprising the steering committee executed a support agreement (the "Support Agreement") in furtherance of consummating the Merger and the Amendments either out-of-court or under a chapter 11 plan.  On December 6, 2012, Dex One requested that senior secured lenders (other than the members of the steering committee) become parties to the Support Agreement.  On December 20, 2012, Dex One announced that most of its senior secured lenders had become parties to the Support Agreement.[4]  After obtaining the Securities and Exchange Commission's approval of its solicitation materials on February 8, 2013, Dex One commenced solicitation of its

---

[3]    Contemporaneously, SuperMedia negotiated with its senior secured lenders to amend and restate its senior secured credit facility.

[4]    As of such date, lenders holding the following percentages of claims, by number and amount of the aggregate claims held, respectively, under each of the Debtors' credit facilities, were party to the Support Agreement: Dex Media East, Inc. credit facility — 71.6% / 81.4%; Dex Media West, Inc. credit facility — 87.5% / 94.8%; and R.H. Donnelley Inc. credit facility — 70.9% / 86.4%.

shareholders to approve the Merger, whether on an in-court or an out-of-court basis. At the same time, Dex One began soliciting senior secured lenders to approve the Amendments, whether on an in-court or an out-of-court basis. The solicitation of both the shareholders and the lenders was in accordance with sections 1125 and 1126 of the Bankruptcy Code and included a request for votes to accept a prepackaged chapter 11 plan (the "Plan"), which provides for consummation of the Merger and the Amendments if Dex One elected to pursue the restructuring through chapter 11 bankruptcy cases. SuperMedia, in parallel, commenced a similar solicitation process with respect to its senior lenders and shareholders.

10.     Dex One did not obtain the unanimous lender consent necessary to effect the Amendments outside of bankruptcy. By contrast, the voting results were overwhelmingly in favor of the transactions and more than sufficient for Plan approval under the Bankruptcy Code. Dex One's senior secured lenders comprise its three impaired voting claims classes under the Plan. Of the 400 senior secured lender votes received, *398 were cast in favor of the Plan*. Specifically, of those class 5 claim holders that voted on the Plan, 99.06% of holders, holding 97.23% of class 5 claims, voted to accept the Plan. Of those class 6 claim holders that voted on the Plan, 100% of holders, holding 100% of class 6 claims, voted to accept the Plan. And of those class 7 claim holders that voted on the Plan, 99.35% of holders, holding 99.59% of class 7 claims, voted to accept the Plan. Also, of those shareholders that voted on the Plan, holders of 99.90% in amount of Dex One Corporation interests voted to accept the Plan.[5]

---

[5]     Shareholders holding approximately 80% of Dex One Corporation issued and outstanding common stock voted to accept the Plan.

11.    Thus, the Debtors filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code and the Plan on the Petition Date.[6]  Contemporaneously, SuperMedia filed for chapter 11 protection and a prepackaged chapter 11 plan providing for consummation of the transactions.  On the effective date of the parties' respective chapter 11 plans, the Amendments and the Merger will close.  Dex One Corporation's shareholders will own about 60% of the combined company's equity and SuperMedia's shareholders will own the remaining equity.

### Services to Be Provided

12.    This Application pertains only to the work to be performed by Epiq under the Clerk's delegation of duties permitted by section 156(c) of the Judicial Code, Local Rule 2002-1(f), and the Claims Agent Protocol, and any work to be performed by Epiq outside of this scope is not covered by this Application or by any order granting approval thereof.  Specifically, Epiq will perform, to the extent the Debtors request, the following services in its role as Claims and Noticing Agent (the "Claims and Noticing Services"), as well as all quality control relating thereto:

   a.    preparing and serving required notices and documents in the cases in accordance with the Bankruptcy Code and the Bankruptcy Rules in the form and manner directed by the Debtors and/or the Court, including, if applicable, (i) notice of the commencement of the cases, (ii) notices of transfers of claims, (iii) notices of objections to claims and objections to transfers of claims, (iv) notices of any hearings on a disclosure statement and confirmation of the Debtors' Plan, including under Bankruptcy Rule 3017(d), (v) notice of the effective date of any plan, and (vi) all other notices, orders, pleadings, publications, and other documents as the Debtors and/or the Court may deem necessary or appropriate for an orderly administration of the chapter 11 cases;

   b.    maintaining (i) a list of all potential creditors, equity holders, and other parties in interest, and (ii) a "core" mailing list consisting of all parties

---

[6]    The Debtors have filed a motion seeking joint administration of their chapter 11 cases under Rule 1015(b) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").  The Debtors are operating their business as debtors in possession under sections 1107(a) and 1108 of the Bankruptcy Code.

described in Bankruptcy Rule 2002 and those parties that have filed a notice of appearance pursuant to Bankruptcy Rule 9010;

c.     maintaining a post office box or address for the purpose of receiving claims and returned mail, and processing all mail received;

d.     preparing and filing or causing to be filed with the Clerk an affidavit or certificate of service for all notices, motions, orders, other pleadings, or documents served within seven business days of service that includes (i) either a copy of the notice served or the docket number (s) and title(s) of the pleading(s) served, (ii) a list of persons to whom it was mailed (in alphabetical order) with their addresses, (iii) the manner of service, and (iv) the date served;

e.     processing all proofs of claim received, including those received by the Clerk's office, and checking said processing for accuracy, and maintaining the original proofs of claim in a secure area;

f.     maintaining the official claims register for each Debtor (the "Claims Registers") on behalf of the Clerk and upon the Clerk's request, providing the Clerk with certified, duplicate unofficial Claims Registers; and specifying in the Claims Registers the following information for each claim docketed: (i) the claim number assigned, (ii) the date received, (iii) the name and address of the claimant and agent, if applicable, who filed the claim, (iv) the amount asserted, (v) the asserted classification(s) of the claim (e.g., secured, unsecured, priority, etc.), (vi) the applicable Debtor, and (vii) any disposition of the claim;

g.     implementing necessary security measures to ensure the completeness and integrity of the Claims Registers and the safekeeping of the original claims;

h.     recording all transfers of claims and providing any notices of such transfers as required by Bankruptcy Rule 3001(e);

i.     relocating, by messenger or overnight delivery, all of the court-filed proofs of claim to the offices of Epiq, not less than weekly;

j.     upon completion of the docketing process for all claims received to date for each case, turning over to the Clerk copies of the Claims Registers for the Clerk's review (upon the Clerk's request);

k.     monitoring the Court's docket for all notices of appearance, address changes, and claims-related pleadings and orders filed, and making necessary notations on and/or changes to the Claims Registers;

l.     assisting in the dissemination of information to the public and responding to requests for administrative information regarding the cases, as directed

by the Debtors and/or the Court, including through the use of a case website and/or call center;

m.      thirty days prior to the close of these cases, to the extent practicable, requesting that the Debtors submit to the Court a proposed order dismissing Epiq and terminating Epiq's services upon completion of its duties and responsibilities and upon the closing of these cases;

n.      within seven days notice to Epiq of entry of an order closing the chapter 11 cases, providing to the Court the final version of the Claims Registers as of the date immediately before the close of the cases; and

o.      at the close of these cases, boxing and transporting all original documents, in proper format, as provided by the Clerk's office, to (i) the Federal Archives Record Administration, located at Central Plains Region, 200 Space Center Drive, Lee's Summit, Missouri 64064 or (ii) any other location requested by the Clerk's Office.

13.      The Claims Registers shall be open to the public for examination without charge during regular business hours and on a case-specific website maintained by Epiq. Epiq shall not employ any past or present employee of the Debtors for work that involves the Debtors' bankruptcy cases.

## Epiq's Qualifications

14.      Epiq is one of the country's leading chapter 11 administrators, with significant experience in noticing, claims administration, solicitation, balloting, and facilitating other administrative aspects of chapter 11 cases. Epiq has substantial experience providing services, including claims and noticing services, in matters comparable in size and complexity to this matter. See, e.g., In re Satcon Tech. Corp., No. 12-12869 (KG) (Bankr. D. Del. Oct. 18, 2012); In re Prince Sports, Inc., No. 12-11439 (KJC) (Bankr. D. Del. May 2, 2012); In re Amicus Wind Down Corp. (f/k/a Friendly Ice Cream Corp.), No. 11-13167 (KG) (Bankr. D. Del. Oct. 6, 2011); In re SSI Grp. Holding Corp., No. 11-12917 (MFW) (Bankr. D. Del. Sept. 15, 2011); In re L.A. Dodgers LLC, No. 11-12010 (KG) (Bankr. D. Del. July 19, 2011); In re Anchor Blue Holding Corp., Case No. 11-10110 (PJW) (Bankr. D. Del. Jan. 12, 2011); In re Post-Sale Co. II, LLC

(f/k/a Consol. Horticulture Grp. LLC), No. 10-13308 (CSS) (Bankr. D. Del. Oct. 14, 2010), In re

Trico Marine Servs., Inc., No. 10-12653 (BLS) (Bankr. D. Del. Aug. 27, 2010); In re Leslie

Controls, Inc., No. 10-12199 (CSS) (Bankr. D. Del. July 14, 2010); In re PCAA Parent, LLC,

No. 10-10250 (MFW) (Bankr. D. Del. Jan. 29, 2010).[7]

15.    By appointing Epiq as the Claims and Noticing Agent in these cases, the

distribution of notices and the processing of claims will be expedited, and the Clerk's office will

be relieved of the administrative burden of processing such claims.    In support of this

Application, the Debtors submit the Meyerowitz Declaration, attached hereto as Exhibit B.

### Compensation and Representation of Disinterestedness

16.    The Debtors respectfully request that the undisputed fees and expenses incurred

by Epiq in the performance of the above services be treated as administrative expenses of the

Debtors' estates pursuant to section 503(b)(1)(A) of the Bankruptcy Code and be paid in the

ordinary course of business without further application to or order of the Court.  Epiq agrees to

maintain records of all services showing dates, categories of services, fees charged, and expenses

incurred, and to serve monthly invoices on the Debtors, the Office of the United States Trustee,

counsel for the Debtors, counsel for any official committee, if any, monitoring the expenses of

the Debtors, and any party in interest who specifically requests service of the monthly invoices.

If any dispute arises relating to the Services Agreement or monthly invoices, the parties shall

meet and confer in an attempt to resolve the dispute.  If resolution is not achieved, the parties

may seek resolution of the matter from the Court.

---

[7]    Because of the voluminous nature of the orders cited herein, such orders have not been attached to this
application.  Copies of these orders are available upon request of the Debtors' proposed counsel.

17.     Prior to the Petition Date, the Debtors provided Epiq a retainer in the amount of $25,000.  Epiq seeks to hold the retainer under the Services Agreement during the cases as security for the payment of fees and expenses incurred under the Services Agreement.

18.     In connection with its retention as the Claims and Noticing Agent, Epiq represents in the Meyerowitz Declaration, among other things, that:

a.     Epiq will not consider itself employed by the United States government and shall not seek any compensation from the United States government in its capacity as the Claims and Noticing Agent in the cases;

b.     by accepting employment in the cases, Epiq waives any rights to receive compensation from the United States government in connection with the Debtors' cases;

c.     in its capacity as the Claims and Noticing Agent in the cases, Epiq will not be an agent of the United States and will not act on behalf of the United States; and

d.     it is a "disinterested person" as that term is defined in section 101(14) of the Bankruptcy Code with respect to the matters upon which it is to be engaged.

19.     To the extent that there is any inconsistency between this Application, the Order, and the Services Agreement, the Debtors respectfully submit that the Order shall govern.

## Compliance with the Claims Agent Protocol

20.     The Debtors represent that this Application complies with the Claims Agent Protocol and conforms to the standard section 156(c) application used in this district.

## Basis for Relief

21.     This Application is made pursuant to section 156(c) of the Judicial Code, section 105(a) of the Bankruptcy Code, Rule 2002-1(f) of the Local Rules, and the Claims Agent Protocol for an Order appointing Epiq as the Claims and Noticing Agent in order to assume full responsibility for the distribution of notices and the maintenance, processing, and docketing of proofs of claim filed in the Debtors' cases.

22.     Section 156 of the Judicial Code, in relevant part, provides:

> Any court may utilize facilities or services, either on or off the court's premises, which pertain to the provision of notices, dockets, calendars, and other administrative information to parties in cases filed under the provisions of title 11, United States Code, where the costs of such facilities or services are paid for out of the assets of the estate and are not charged to the United States. The utilization of such facilities or services shall be subject to such conditions and limitations as the pertinent circuit council may prescribe.

28 U.S.C. § 156(c).

23.     Section 105 of the Bankruptcy Code, in relevant part, provides:

> The court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title. No provision of this title providing for the raising of an issue by a party in interest shall be construed to preclude the court from, sua sponte, taking any action or making any determination necessary or appropriate to enforce or implement court orders or rules, or to prevent an abuse of process.

11 U.S.C. § 105(a).

24.     Local Rule 2002-1(f) provides:

> Upon motion of the debtor or trustee, at any time without notice or hearing, the Court may authorize the retention of a notice and/or claims clerk under 28 U.S.C. § 156(c). In all cases with more than 200 creditors or parties in interest listed on the creditor matrix, unless the Court orders otherwise, the debtor shall file such motion on the first day of the case or within seven (7) days thereafter. The notice and/or claims clerk shall comply with the Protocol for the Employment of Claims and Noticing Agents under 28 U.S.C. § 156(c) (which can be found on the Court's website) and shall perform the [Claims and Noticing Services].

Del. Bankr. L.R. 2002-1(f).

25.     In accordance with the Claims Agent Protocol, prior to the selection of Epiq, the Debtors reviewed and compared engagement proposals from three court-approved claims and noticing agents, including Epiq, to ensure selection through a competitive process. The Debtors

submit, based on the engagement proposals obtained and reviewed, that Epiq's rates are competitive and reasonable given Epiq's quality of services and expertise.  The terms of Epiq's retention are set forth in the Services Agreement; provided, however, that Epiq is seeking by this Application approval solely of the terms and provisions as set forth in this Application and the Order as set forth in Exhibit A.[8]

26.     The Debtors anticipate that there will be more than 200 entities to be noticed.  In view of the number of anticipated claimants and the complexity of the Debtors' businesses, the Debtors submit that the appointment of Epiq as the Claims and Noticing Agent is both necessary and in the best interests of the Debtors' estates and their creditors because the Debtors will be relieved of the burdens associated with the Claims and Noticing Services.  Accordingly, the Debtors will be able to devote their full attention and resources to the restructuring efforts described above.

### Nunc Pro Tunc Relief Is Appropriate

27.     Pursuant to the Debtors' request, Epiq has acted as the Claims and Noticing Agent since the Petition Date with assurances that the Debtors would seek approval of its employment and retention, effective nunc pro tunc to the Petition Date, so that Epiq may be compensated for its pre-application services.  The Debtors believe that no party in interest will be prejudiced by the granting of the nunc pro tunc employment of Epiq, because Epiq has provided and continues to provide valuable services to the Debtors' estates in the interim period.

28.     Courts in this jurisdiction have routinely approved nunc pro tunc employment similar to that requested herein in matters comparable to this matter.  See, e.g., In re Satcon

---

[8]     Contemporaneously with the filing of this Application, the Debtors have filed the *Application of Dex One Corporation, et al. for Entry of an Order Approving the Retention and Employment of Epiq Bankruptcy Solutions, LLC as the Administrative Agent for the Debtors, Effective Nunc Pro Tunc to the Petition Date*, whereby they seek to employ Epiq to provide certain bankruptcy administrative services to the Debtors during these chapter 11 cases.

Tech. Corp., No. 12-12869 (KG) (Bankr. D. Del. Oct. 17, 2012) (approving nunc pro tunc employment of Epiq to perform claims and noticing services); In re Prince Sports, Inc., No. 12-11439 (KJC) (Bankr. D. Del. May 2, 2012) (same).

29.     Based on the foregoing, the Debtors submit that they have satisfied the requirements of the Judicial Code, the Local Rules, and the Claims Agent Protocol. Accordingly, the Debtors respectfully request entry of the Order pursuant to section 156(c) of the Judicial Code, Local Rule 2002-1(f), and the Claims Agent Protocol authorizing the Debtors to retain and employ Epiq to act as Claims and Noticing Agent, effective nunc pro tunc to the Petition Date.

<b><u>Notice</u></b>

30.     The Debtors have provided notice of this Application to:  (a) the Office of the United States Trustee for the District of Delaware; (b) the entities listed on the Consolidated List of Creditors Holding the 30 Largest Unsecured Claims; (c) counsel to the administrative agents of the Debtors' prepetition secured credit facilities; (d) counsel to the indenture trustee for the Debtors' prepetition senior subordinated notes; (e) counsel to SuperMedia; (f) the Internal Revenue Service; (g) the Securities and Exchange Commission; and (h) any party that has requested notice pursuant to Bankruptcy Rule 2002.  As this Application is seeking "first day" relief, within two business days of the hearing on this Application, the Debtors will serve copies of this Application and any order entered in respect to this Application as required by Local Rule 9013-1(m).  The Debtors submit that, in light of the nature of the relief requested, no other or further notice need be given.

**No Prior Request**

31.     No prior application for the relief requested herein has been made to this or any other court.

WHEREFORE, for the reasons set forth herein and in the Meyerowitz Declaration, the Debtors respectfully request that the Court enter the Order, substantially in the form attached hereto as Exhibit A, granting the relief requested herein and such other and further relief as the Court deems appropriate.

Dated: March 18, 2013
       Wilmington, Delaware

Laura Davis Jones (DE Bar No. 2436)
Peter J. Keane (DE Bar No. 5503)
**PACHULSKI STANG ZIEHL & JONES LLP**
919 North Market Street, 17th Floor
P.O. Box 8705
Wilmington, Delaware 19899-8705 (Courier 19801)
Telephone:     (302) 652-4100
Facsimile:     (302) 652-4400
Email:             ljones@pszjlaw.com
                       pkeane@pszjlaw.com

- and -

James H.M. Sprayregen, P.C. (pro hac vice admission pending)
Marc Kieselstein, P.C. (pro hac vice admission pending)
Christopher J. Marcus, P.C. (pro hac vice admission pending)
**KIRKLAND & ELLIS LLP**
601 Lexington Avenue
New York, New York 10022-4611
Telephone:     (212) 446-4800
Facsimile:     (212) 446-4900
Email:             james.sprayregen@kirkland.com
                       marc.kieselstein@kirkland.com
                       christopher.marcus@kirkland.com

Proposed Attorneys for the
Debtors and Debtors in Possession