# IN THE UNITED STATES BANKRUPTCY COURT
## DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | ) Chapter 11 |
| | ) |
| DEX ONE CORPORATION, et al.,[1] | ) Case No. 13-10533(KG) |
| | ) |
| Debtors. | ) (Jointly Administered) |
| | ) |

*Re: DI # 7, 58*

FINAL ORDER UNDER 11 U.S.C. §§ 105, 361, 362, 363, 507 AND 552, AND
BANKRUPTCY RULES 2002, 4001 AND 9014 (I) AUTHORIZING DEBTORS
TO USE CASH COLLATERAL AND (II) GRANTING ADEQUATE PROTECTION TO
PREPETITION LENDERS

### (R.H. DONNELLEY INC. FINAL ORDER)

Upon the motion, dated March 18, 2013 (the "Motion") [Docket No. 7], of Dex One

Corporation ("Dex One") and its affiliated debtors, each as debtor and debtor-in-possession

(collectively, the "Debtors") in the above-captioned cases (the "Cases"), for interim and final

orders under sections 105, 361, 362, 363, 507 and 552 of title 11 of the United States Code, 11

U.S.C. §§ 101, et seq. (as amended, the "Bankruptcy Code"), and Rules 2002, 4001 and 9014 of

the Federal Rules of Bankruptcy Procedure (as amended, the "Bankruptcy Rules"), seeking:

     (I)     authorization for Dex One, Dex Media, Inc. ("DMI"), Dex One

Digital Inc. ("Dex Digital"), Dex One Service, Inc. ("Dex Service"), R.H.

Donnelley Corporation ("RHDC", together with Dex One, DMI, Dex Digital and

Dex Service, the "Shared Collateral Debtors") R.H. Donnelley Inc. ("RHDI") and

R.H. Donnelley APIL Inc. ("RHD APIL", collectively with RHDI and the Shared

---

[1] The Debtors, followed by the last four digits of their respective taxpayer identification numbers, are as follows: Dex One Corporation (0040); Dex Media, Inc. (9762); Dex Media East, Inc. (5763); Dex Media West, Inc. (7004); Dex Media Service LLC (9647); Dex One Digital, Inc. (9750); Dex One Service, Inc. (0222); R.H. Donnelley Inc. (7635); R.H. Donnelley APIL, Inc. (6495); R.H. Donnelley Corporation (2490); Newdex, Inc. (1335); and Spruce Acquisition Sub, Inc. (4006). For the purposes of these Chapter 11 Cases, the service address for the Debtors is: 1001 Winstead Drive, Cary, North Carolina, 27513.

Collateral Debtors, the "Applicable Debtors"), pursuant to sections 105, 361, 362, 363, 507 and 552 of the Bankruptcy Code to (a) use the Cash Collateral (as defined in paragraph 5(e) below), and all other Prepetition Collateral (as defined in paragraph 5(d) below); and (b) provide adequate protection to the Administrative Agent, the Shared Collateral Agent and the Lenders (each as defined below) under the Third Amended and Restated Credit Agreement, dated as of January 29, 2010 (as amended, supplemented or otherwise modified, the "Credit Agreement"), among RHDI, in its capacity as the borrower, Dex One, the lenders from time to time party thereto (including in their (or their affiliates') capacity as party to a Specified Swap Agreement or Specified Cash Management Arrangement (each as defined in the Guarantee and Collateral Agreement (as defined in paragraph 5(a) below), collectively, the "Lenders") and Deutsche Bank Trust Company Americas, as Administrative Agent and Collateral Agent (the "Administrative Agent");

(II)    authorization for the Administrative Agent and the Shared Collateral Agent to exercise remedies under the Loan Documents, the Shared Guarantee and Collateral Agreement (as defined in paragraph 5(a) below) and this final order (this "Final Order"), as the case may be, upon the occurrence and during the continuance of a Termination Event (as defined in paragraph 12 below);

(III)    upon entry of this Final Order, authorization to grant adequate protection liens on the proceeds and property recovered in respect of the

2

Applicable Debtors' claims and causes of action (but not on the actual claims and causes of action) arising under sections 544, 545, 547, 548 and 550 of the Bankruptcy Code (collectively, the "Avoidance Actions"), as identified pursuant to Rule 4001-2(a)(i)(D) of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules");

(IV)    upon entry of this Final Order, and except to the extent of the Carve Out (as defined in paragraph 10(c) below), the waiver by the Debtors of any right to surcharge against the Prepetition Collateral or the Collateral (as defined in paragraph 10(b) below) pursuant to section 506(c) of the Bankruptcy Code or any other applicable principle of equity or law, as identified pursuant to Local Rule 4001-2(a)(i) (C);

(V)    to schedule, pursuant to Bankruptcy Rule 4001, an interim hearing (the "Interim Hearing") on the Motion to be held before this Court to consider entry of an interim order (the "Interim Order") (a) authorizing the Applicable Debtors to use the Cash Collateral; and (b) granting adequate protection to the Administrative Agent, the Shared Collateral Agent and the Lenders;

(VI)    to schedule, pursuant to Bankruptcy Rule 4001, a final hearing (the "Final Hearing") for this Court to consider entry of this Final Order authorizing the Applicable Debtors on a final basis to continue to use the Cash Collateral and authorizing and approving the relief requested in the Motion to become effective pursuant to this Final Order; and

(VII)   waiver of any applicable stay with respect to the effectiveness and enforceability of this Final Order (including a waiver pursuant to Bankruptcy Rule 6004(h)).

The Interim Hearing having been held by this Court on March 19, 2013; and the Interim Order having been entered by this Court on March 19, 2013 [Docket No. 58]; and upon the record made by the Debtors at the Interim Hearing (including, without limitation, the Declaration of Mark W. Hianik); and this Court having heard and resolved or overruled any objections to the final relief requested in the Motion; and it appearing that the final relief requested in the Motion is in the best interests of the Debtors, their estates and creditors; and after due deliberation and consideration and sufficient cause appearing therefor,

IT IS FOUND, DETERMINED, ORDERED AND ADJUDGED, that:

1.      *The Motion.*  The Motion is granted on a final basis as set forth herein.  Any objection to the Motion to the extent not withdrawn or resolved is hereby overruled.

2.      *Jurisdiction.*  This Court has core jurisdiction over the Cases commenced on March 18, 2013 (the "Petition Date"), the Motion, and the parties and property affected hereby pursuant to 28 U.S.C. §§ 157(b) and 1334.  Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

3.      *Committee Formation.*  A statutory committee of unsecured creditors has not been appointed in the Cases.

4.      *Notice.*  Notice of the Motion, the relief requested therein and the Final Hearing was served by the Debtors by mailing a copy of the Interim Order to the parties that were given

4

notice of the Interim Hearing and to any party that requested notice pursuant to Bankruptcy Rule 2002. The notice given by the Debtors of the Motion, the relief requested therein and of the Interim Order and the Final Hearing constitutes due and sufficient notice thereof and complies with Bankruptcy Rules 2002, 4001(b), (c) and (d) and the requirements of the Interim Order.

5.    *Debtors' Stipulations.*  Without prejudice to the rights of any other party (but subject to the limitations thereon contained in paragraphs 21 and 22 below) the Debtors admit, stipulate, and agree that:

(a)    as of the Petition Date, the Applicable Debtors were indebted and liable to the Lenders, without defense, counterclaim or offset of any kind, for all of the Obligations[2], including without limitation, the Loans made by the Lenders in the aggregate principal amount of approximately $746,666,325.40 under the Credit Agreement plus accrued and unpaid interest, indemnification obligations, cash management obligations, obligations arising under Specified Swap Agreements (as defined in the Guarantee and Collateral Agreement (as defined below)) and fees and expenses (including, without limitation, the reasonable fees and expenses of the Administrative Agent's attorneys, consultants, accountants, experts and financial advisors) and other obligations incurred in connection therewith, in each case in accordance with the terms of the Loan Documents; the Obligations are unconditionally and irrevocably guaranteed by (i) RHD APIL pursuant to the Third Amended and Restated Guarantee and Collateral Agreement, dated as of January 29, 2010 (as further amended, supplemented or otherwise modified, the "Guarantee and Collateral Agreement"), among RHDI, the other Debtors party thereto from time to time and

---

[2]    Capitalized terms used in this Final Order and not otherwise defined herein shall have the meanings given to such terms in the Credit Agreement.

the Administrative Agent and (ii) the Shared Collateral Debtors pursuant to the Shared

Guarantee and Collateral Agreement, dated as of January 29, 2010 (as amended, supplemented

or otherwise modified, the "Shared Guarantee and Collateral Agreement"), among Dex One, the

other Shared Collateral Debtors party thereto from time to time and JPMorgan Chase Bank, N.A.

in its capacity as the shared collateral agent (the "Shared Collateral Agent");

        (b)      the Obligations constitute the legal, valid and binding obligation of the

Applicable Debtors, enforceable in accordance with their terms (except as subject to the stay of

enforcement arising under section 362 of the Bankruptcy Code);

        (c)      (i) no portion of the Obligations and no amounts paid at any time to the

Administrative Agent, Shared Collateral Agent or Lenders  in respect of the Obligations, the

Loan Documents, the Support Agreement and the transactions contemplated thereby is subject to

contest, attack, objection, recoupment, defense, setoff, counterclaim, avoidance,

recharacterization, reclassification, reduction, disallowance, recovery or subordination or other

challenge pursuant to the Bankruptcy Code or applicable nonbankruptcy law and (ii) the

Applicable Debtors do not have any claims, counterclaims, causes of action, defenses or setoff

rights related to the Obligations or the Loan Documents, whether arising under the Bankruptcy

Code or applicable nonbankruptcy law, on or prior to the date hereof, against the Administrative

Agent, the Shared Collateral Agent, the Lenders, and their respective affiliates, subsidiaries,

agents, officers, directors, employees, attorneys and advisors;

        (d)      the liens and security interests granted to the Administrative Agent and the

Shared Collateral Agent, as applicable, for the benefit of the Lenders pursuant to and in

connection with the Security Documents, including without limitation, the (x) Guarantee and

Collateral Agreement and (y) Shared Guarantee and Collateral Agreement are, in each case, valid, binding, perfected, enforceable, first priority liens and security interests on the "Collateral" under, and as defined in, the Credit Agreement and the "Shared Collateral" under, and as defined in, the Shared Guarantee and Collateral Agreement (such "Collateral" and "Shared Collateral", including in each case the Cash Collateral, collectively referred to herein as the "Prepetition Collateral"), subject in each case to permitted exceptions under the Credit Agreement and the other Loan Documents, and are (i) not subject to objection, defense, contest, avoidance, recharacterization, reclassification, reduction or subordination pursuant to the Bankruptcy Code or applicable non-bankruptcy law by any person or entity and (ii) subject and subordinate only to (A) the Carve Out, (B) the liens and security interests granted to secure the Adequate Protection Obligations (as defined in paragraph 9 below), and (C) the liens and security interests granted to secure the "Adequate Protection Obligations" pursuant to, and as such term is defined in, each of the Other Cash Collateral Orders (as defined in paragraph 5(f) below), to the extent such liens and security interests attach to Shared Collateral, which liens and security interests shall be *pari passu* with the Adequate Protection Liens granted on the Shared Collateral hereunder, (D) with respect to liens and security interests on the Shared Collateral, the "Carve Out" (as defined in each of the Other Cash Collateral Orders), and (E) valid, perfected and unavoidable liens permitted under the Loan Documents to the extent such liens are permitted to be senior to the liens of the Administrative Agent or the Shared Collateral Agent on the Prepetition Collateral pursuant to the terms of the Loan Documents;

(e)     other than cash securing the reimbursement obligations with respect to any outstanding letter of credit issued on behalf of an Applicable Debtor, the Applicable Debtors'

cash (excluding any cash of Dex Digital or RHDC that is not the proceeds of Prepetition Collateral), including without limitation, all cash and other amounts on deposit or maintained in any account or accounts by such Applicable Debtors and any amounts generated by the collection of accounts receivable, sale of inventory or other disposition of the Prepetition Collateral, constitutes proceeds of the Prepetition Collateral and, therefore, is the Administrative Agent's cash collateral and, with respect to any cash that is Shared Collateral or the proceeds of Shared Collateral, is the Shared Collateral Agent's cash collateral, within the meaning of section 363(a) of the Bankruptcy Code (the "Cash Collateral"); and

(f)      the Debtors are also seeking in the Motion entry of final orders (the "Other Cash Collateral Orders") authorizing them to use the collateral, including cash collateral and Shared Collateral, securing all obligations under the Dex East Credit Agreement and the Dex West Credit Agreement (each as defined in the Motion).  This Court entered or will enter each of the Other Cash Collateral Orders on a final basis substantially contemporaneously herewith.

6.      *Findings Regarding the Use of Cash Collateral and Prepetition Collateral.*

(a)      Good cause has been shown for the entry of this Final Order.

(b)      The Applicable Debtors need to use the Prepetition Collateral, including the Cash Collateral, to permit, among other things, the orderly continuation of their businesses, to maintain and generate the confidence of their customers and vendors and to preserve the going concern value of the Debtors.

(c)      The terms of the use of the Prepetition Collateral (including the Cash Collateral) pursuant to this Final Order are fair and reasonable, reflect the Applicable Debtors'

exercise of prudent business judgment consistent with their fiduciary duties and constitute reasonably equivalent value and fair consideration.

(d)    The terms of the use of the Prepetition Collateral (including the Cash Collateral) have been the subject of extensive negotiations conducted in good faith and at arm's length among the Debtors, the Administrative Agent, the Shared Collateral Agent and the Lenders, and, pursuant to sections 105, 361 and 363 of the Bankruptcy Code, the Administrative Agent, the Shared Collateral Agent and the Lenders are hereby found to be entities that have acted in "good faith" in connection with the negotiation and entry of this Final Order, and each is entitled to the protection provided under section 363(m) of the Bankruptcy Code.

(e)    Absent granting the relief sought by this Final Order, the Applicable Debtors' estates will be irreparably harmed. The use of the Prepetition Collateral (including the Cash Collateral) in accordance with this Final Order is in the best interests of the Applicable Debtors' estates.

7.    *Authorization of Use of Cash Collateral and Prepetition Collateral.*

The Applicable Debtors are hereby authorized to continue to use the Prepetition Collateral (including the Cash Collateral) through and including the Termination Date only for (i) working capital, general corporate purposes and administrative costs and expenses of the Applicable Debtors incurred in the Cases and in the ordinary course of business, subject to the terms hereof and, with respect to any Prepetition Collateral (including the Cash Collateral) that is Shared Collateral, subject to the terms of the Other Cash Collateral Orders; and (ii) adequate protection payments to the Administrative Agent and the Lenders, as contemplated herein. All post-petition distributions and transfers by an Applicable Debtor to any other Debtor, including

any other Applicable Debtor, (each, a "Debtor Transferee") shall constitute an allowed administrative expense under sections 503(b)(1) and 507(a)(2) of the Bankruptcy Code against such Debtor Transferee in the aggregate amount of such distribution or transfer, which administrative expense claim against such Debtor Transferee shall be junior in all respects to the 507(b) Claims against such Debtor Transferee.

8.    *Consent by the Administrative Agent, the Shared Collateral Agent and the Required Lenders.*

Subject to the terms of this Final Order (including, without limitation, paragraph 17), the Administrative Agent, the Shared Collateral Agent and the Required Lenders (pursuant to section 2.1(b)(iii) of the Support Agreement (as defined in paragraph 11(d) below)) have consented to the Applicable Debtors' proposed use of the Prepetition Collateral (including the Cash Collateral).

9.    *Entitlement to Adequate Protection.*

The Administrative Agent, the Shared Collateral Agent and the Lenders are entitled, pursuant to sections 361, 363(c)(2), 363(e) and 552 of the Bankruptcy Code, to adequate protection of their interests in the Prepetition Collateral, including the Cash Collateral, in an amount equal to the aggregate post-petition diminution in value of the Prepetition Collateral, including without limitation, any such diminution resulting from the sale, lease or use by the Applicable Debtors (or other decline in value) of the Cash Collateral (including, without limitation, use of Cash Collateral for the Carve Out) and the other Prepetition Collateral, and the imposition of the automatic stay pursuant to section 362 of the Bankruptcy Code (such diminution in value, the "Adequate Protection Obligations").

10.    *Adequate Protection Claims and Liens.*

As adequate protection, the Administrative Agent, the Shared Collateral Agent and the Lenders are hereby granted the following claims, liens, rights and benefits:

(a)    <u>Section 507(b) Claim</u>.  The Adequate Protection Obligations due to the Administrative Agent, the Shared Collateral Agent and the Lenders shall constitute joint and several superpriority claims against the Applicable Debtors as provided in section 507(b) of the Bankruptcy Code (subject to clause (x) and (y) of the immediately following proviso), with priority in payment over any and all unsecured claims and administrative expense claims against the Applicable Debtors, now existing or hereafter arising, of the kinds specified or ordered pursuant to any provision of the Bankruptcy Code, including without limitation, sections 105, 326, 328, 330, 331, 503(b), 506(c), 507(a), 507(b), 726, 1113 or 1114 of the Bankruptcy Code, and shall at all times be senior to the rights of the Applicable Debtors, and any successor trustee or any creditor, in the Applicable Debtors' Cases or any subsequent proceedings under the Bankruptcy Code (the "<u>507(b) Claim</u>"), subject and subordinate only to the Carve Out; <u>provided</u> that, (x) none of RHDI, Dex Media East, Inc., Dex Media West, Inc., RHD APIL, Newdex, Inc., Spruce Acquisition Sub. Inc. and Dex Media Service LLC (collectively, the "<u>Non-Shared Collateral Debtors</u>") shall have any obligations to pay (directly or indirectly) or otherwise make distributions on account of 507(b) Claims against the Shared Collateral Debtors and such 507(b) Claims shall not be joint and several claims against the Non-Shared Collateral Debtors, (y) none of the Shared Collateral Debtors shall have any obligations to pay (directly or indirectly) or otherwise make distributions on account of 507(b) Claims against the Non-Shared Collateral Debtors and such 507(b) Claims shall not be joint and several claims against the Shared

11

Collateral Debtors and (z) any 507(b) Claims against the Shared Collateral Debtors shall have equal payment priority to any 507(b) Claims against the Shared Collateral Debtors arising under, and as such term is defined in, the Other Cash Collateral Orders and any payments or distributions on account of the 507(b) Claims against the Shared Collateral Debtors shall be subject to the terms of the Intercreditor Agreement. This Court retains jurisdiction to resolve any dispute with respect to the amount of any 507(b) Claims.

      (b)     <u>Adequate Protection Liens</u>. As security for the Adequate Protection Obligations, effective as of the Petition Date and perfected without the necessity of the execution by the Applicable Debtors (or recordation or other filing) of security agreements, control agreements, pledge agreements, financing statements, mortgages or other similar documents, or the possession or control by the Administrative Agent or the Shared Collateral Agent of any Collateral (as defined below), the following security interests and liens are hereby granted to the Administrative Agent or, with respect to the Adequate Protection Obligations owing to the Shared Collateral Agent, to the Shared Collateral Agent, in each case for its own benefit and the benefit of the Lenders (all property identified in clauses (i), (ii), (iii) and (iv) below being collectively referred to as the "<u>Collateral</u>"), subject only to the Carve Out (all such liens and security interests, the "<u>Adequate Protection Liens</u>"):

      (i)     <u>First Priority on Unencumbered Property</u>. Pursuant to sections 361(2) and 363(c)(2) of the Bankruptcy Code, a valid, binding, continuing, enforceable, fully-perfected, non-voidable first priority replacement lien on, and security interest in, all of the Applicable Debtors' rights in tangible and intangible assets, including without limitation, all prepetition and post-petition property of

12

the Applicable Debtors' estates, and all products and proceeds thereof, whether

existing on or as of the Petition Date or thereafter acquired, that is not subject to

(x) valid, perfected, non-avoidable and enforceable liens in existence on or as of

the Petition Date or (y) valid and unavoidable liens in existence immediately prior

to the Petition Date that are perfected after the Petition Date as permitted by

section 546(b) of the Bankruptcy Code (collectively, the "Unencumbered

Property"), including without limitation, any and all unencumbered cash, accounts

receivable, other rights to payment, inventory, general intangibles, contracts,

servicing rights, servicing receivables, securities, chattel paper, owned real estate,

real property leaseholds, fixtures, machinery, equipment, deposit accounts,

patents, copyrights, trademarks, tradenames, rights under license agreements and

other intellectual property, claims and causes of action (including those arising

under section 549 of the Bankruptcy Code), and the proceeds of all of the

foregoing, provided that, (1) the Unencumbered Property shall not include the

Avoidance Actions, but the Unencumbered Property shall include, and the

Adequate Protection Liens shall attach to, any proceeds or property recovered in

respect of any Avoidance Actions, and (2) to the extent any Unencumbered

Property is the property of a Shared Collateral Debtor or the product or proceeds

thereof, the Adequate Protection Liens on such Unencumbered Property shall be

pari passu with the Adequate Protection Liens granted on such Unencumbered

Property pursuant to, and as such term is defined in, each of the Other Cash

13

Collateral Orders, and such Adequate Protection Liens shall be subject to the terms of the Intercreditor Agreement;

(ii)    <u>Liens Junior to Certain Existing Liens</u>.  Pursuant to sections 361(2) and 363(c)(2) of the Bankruptcy Code, a valid, binding, continuing, enforceable, fully-perfected non-voidable junior priority replacement lien on, and security interest in, all tangible and intangible assets, including without limitation, all prepetition and post-petition property of the Applicable Debtors' estates, and all products and proceeds thereof, whether now existing or hereafter acquired (other than the property described in clause (i) or (iii) of this paragraph 10(b)), that is subject to (x) valid, perfected and unavoidable liens in existence immediately prior to the Petition Date or (y) valid and unavoidable liens in existence immediately prior to the Petition Date that are perfected after the Petition Date as permitted by section 546(b) of the Bankruptcy Code, which valid, perfected and unavoidable liens are senior in priority to the security interests and liens in favor of the Administrative Agent, the Shared Collateral Agent and the Lenders; provided that, to the extent any such encumbered property described in this clause (ii) is the property of a Shared Collateral Debtor (or the proceeds or products of such property are encumbered), the Adequate Protection Liens on such encumbered property, proceeds or products shall be *pari passu* with the Adequate Protection Liens granted on such encumbered property, proceeds or products pursuant to, and as such term is defined in, each of the Other Cash Collateral

Orders, and such Adequate Protection Liens shall be subject to the terms of the Intercreditor Agreement;

(iii)    Liens Senior to Certain Existing Liens.  Pursuant to sections 361(2) and 363(c)(2) of the Bankruptcy Code, a valid, binding, continuing, enforceable, fully-perfected non-voidable priming lien on, and security interest in, all tangible and intangible assets, including without limitation, all prepetition and post-petition property of the Applicable Debtors' estates, and all products and proceeds thereof, whether now existing or hereafter acquired; provided that such liens and security interests shall not prime (x) any valid, perfected and unavoidable liens and security interests in existence immediately prior to the Petition Date that are held by or granted to any person other than the Administrative Agent or the Shared Collateral Agent or (y) valid and unavoidable liens and security interests in existence immediately prior to the Petition Date that are perfected after the Petition Date as permitted by section 546(b) of the Bankruptcy Code and that are held by or granted to any person other than the Administrative Agent or the Shared Collateral Agent; provided further that, to the extent any such priming Adequate Protection Liens granted pursuant to this clause (iii) attach to the property of the Shared Collateral Debtors (or on any of the proceeds or products of such property) such Adequate Protection Liens shall be pari passu with the priming Adequate Protection Liens granted on such property, proceeds or products pursuant to, and as such term is defined in, each of the Other

15

Cash Collateral Orders, and such Adequate Protection Liens shall be subject to the terms of the Intercreditor Agreement;

(iv)    The Adequate Protection Liens shall not be (i) subject or subordinate to (A) any lien or security interest that is avoided and preserved for the benefit of the Applicable Debtors and their estates under section 551 of the Bankruptcy Code or (B) any lien or security interest arising after the Petition Date, subject to the Carve Out, or (ii) except as otherwise set forth in clauses (i), (ii) and (iii) of this paragraph 10(b), subordinated to or made *pari passu* with any other lien or security interest under sections 363 or 364 of the Bankruptcy Code or otherwise;

provided that; (x) the Adequate Protection Liens granted to the Shared Collateral Agent pursuant to this paragraph 10(b) shall be granted only on the property of the Shared Collateral Debtors and the proceeds and products of such property, and no Adequate Protection Liens in favor of the Shared Collateral Agent shall be granted on the property of the Non-Shared Collateral Debtors or the products or proceeds of such property and (y) the Adequate Protection Liens granted to the Administrative Agent pursuant to this paragraph 10(b) shall be granted only on the property of RHDI and RHD APIL and the proceeds and products of such property, and no Adequate Protection Liens in favor of the Administrative Agent shall be granted on the property of the Shared Collateral Debtors or the products or proceeds of such property.

(c)    For purposes hereof, the "Carve Out" shall mean the following:  (i) without duplication of amounts paid or to be paid by the Debtors under the Other Cash Collateral Orders, all statutory fees required to be paid by the Debtors to the Clerk of the Bankruptcy Court

and to the Office of the U.S. Trustee under section 1930(a) of title 28 of the United States Code (irrespective of whether the Carve Out Trigger Notice (as defined below) has been delivered); (ii) the reasonable fees and expenses up to $50,000 incurred by a trustee appointed in the Applicable Debtors' cases under section 726(b) of the Bankruptcy Code (irrespective of whether the Carve Out Trigger Notice has been delivered); (iii) without duplication of amounts paid or to be paid by the Debtors pursuant to clause (iii) of the definition of "Carve Out" in each of the Other Cash Collateral Orders, all accrued and unpaid fees, disbursements, costs, and expenses (the "Professional Fees") incurred by professionals or professional firms retained by the Debtors or their estates pursuant to section 327, 328, or 363 of the Bankruptcy Code and any statutory committee (the "Committee") appointed in the Debtors' Cases pursuant to section 1103 of the Bankruptcy Code (collectively, the "Professionals"), which Professional Fees (x) are allowed by this Court at any time and (y) were incurred at any time before or on the first Business Day following delivery by the Administrative Agent to counsel to the Debtors identified in paragraph 30 of the Interim Order, the U.S. Trustee, and counsel to any Committee (if any) of a written notice (the "Carve Out Trigger Notice"), which notice may be delivered at any time following the occurrence and during the continuation of any Termination Event (as defined in paragraph 12 below), stating that the Carve Out Cap (as defined below) has been invoked; and (iv) without duplication of amounts paid or to be paid by the Debtors pursuant to clause (iv) of the definition of "Carve Out" in each of the Other Cash Collateral Orders, the Professional Fees allowed by this Court in an aggregate amount for all Debtors not exceeding $2,500,000 (the "Carve Out Cap"), which Professional Fees are incurred by the Professionals after the first Business Day following delivery by the Administrative Agent of the Carve Out Trigger Notice in accordance

17

with the immediately preceding clause (iii); provided that: (x) the Carve Out shall not be available to pay any Professional Fees incurred by any party, including the Debtors or any Committee or any Professionals engaged thereby, in connection with the initiation or prosecution of any claims, causes of action, adversary proceedings or other litigation against the Administrative Agent, the Shared Collateral Agent, the Lenders, or the "Administrative Agent" or the "Lenders" (each as defined in the Other Cash Collateral Orders), it being understood that up to an aggregate of $50,000 shall be made available to any Committee for investigation costs, as described in paragraph 22 below; (y) so long as a Carve Out Trigger Notice shall not have been delivered, the Carve Out shall not be reduced by the payment of Professional Fees allowed at any time by this Court and payable under sections 328, 330 and 331 of the Bankruptcy Code; provided that after delivery of a Carve Out Trigger Notice in accordance with clause (iii) above, the amount in the Carve Out Account (as defined below) shall be reduced on a dollar for dollar basis for Professional Fees allowed by this Court that are paid to the Professionals from the Carve Out Account and the Carve Out Account shall not be replenished for any such amounts so paid; and (z) without prejudice to the rights of the Professionals or the Debtors to contest any such objection, nothing in this Final Order shall be construed to impair the ability of any party to object to any fees, expenses, reimbursements, or compensation sought by any such Professionals, or to the Debtors' allocation of any such fees, expenses, reimbursements, or compensation among the Debtors. Upon receipt by the Debtors of a Carve Out Trigger Notice and, in any event, prior to making any distribution of Collateral, Prepetition Collateral or the proceeds thereof to the Administrative Agent, the Shared Collateral Agent or the Lenders, the Debtors shall promptly deposit an amount equal to the Professional Fees incurred and unpaid as of such

18

date plus an amount equal to the Carve Out Cap in a segregated account (the "Carve Out Account") to be utilized solely for the payment of Professional Fees; provided, however, that the Debtors' depositing such monies into the Carve Out Account shall not impair the right of any party to object to the reasonableness of any such fees or expenses to be paid by the Debtors' estates.  The Debtors' deposit of any amount into the Carve Out Account shall not reduce the amount of the Carve Out or limit the Professionals eligible to be paid therefrom.  As described above and in the Other Cash Collateral Orders, the Carve Out shall be senior to all liens and claims securing the Obligations and the Adequate Protection Obligations (including, without limitation, the 507(b) Claims, the Adequate Protection Liens, and any and all other forms of adequate protection, liens, security interests and administrative, superpriority or other claims granted pursuant to this Final Order or pursuant to, and as such terms are defined in, the Other Cash Collateral Orders).

11.    *Additional Adequate Protection.*

As additional adequate protection, the Administrative Agent, the Shared Collateral Agent and the Lenders hereby are granted the following:

(a)    Payments:  The Applicable Debtors are authorized and directed to pay to the Administrative Agent: (i) on the last Business Day of each calendar month after the entry of this Final Order (or, with respect to accrued and unpaid post-petition interest on Loans, on the dates when otherwise due and payable in accordance with the terms of the Credit Agreement), all accrued and unpaid post-petition interest, fees and costs due and payable under the Credit Agreement (including, without limitation, interest on Loans, interest on terminated Specified Swap Agreements (subject to the Applicable Debtors' rights, if any, to dispute whether such

amounts are due and payable pursuant to the terms of the applicable Specified Swap Agreement), breakage costs, and accrued fees owing to the Administrative Agent), in each case, calculated based on the applicable non-default rate set forth in the Credit Agreement or the other applicable documents; and (ii) all mandatory prepayments and/or scheduled and unpaid amortization payments on the date such payments become due in accordance with the Credit Agreement (determined without giving effect to the acceleration of the Obligations as a result of the commencement of the Cases).

      (b)    <u>Fees and Expenses</u>:  The Applicable Debtors are authorized and directed to pay within fifteen (15) days of presentment of an invoice describing in customary detail (redacted for privilege and work product) the fees, costs and expenses incurred or accrued by the Administrative Agent including without limitation, the reasonable fees and expenses of legal counsel (including local counsel), financial advisors and other professionals hired by or on behalf of the Administrative Agent.  None of the fees, costs, expenses or other amounts payable pursuant to this paragraph shall be subject to separate approval by this Court (but this Court shall resolve any dispute as to the reasonableness of any such fees, costs and expenses), and no recipient of any such payment shall be required to file any interim or final fee application with respect thereto; <u>provided</u>, <u>however,</u> that the Debtors shall submit copies of the Administrative Agent's legal counsels' and financial advisor's invoices to the U.S. Trustee and the Committee (if any), and the Debtors, the U.S. Trustee and the Committee (if any) shall have ten (10) days following their receipt of such invoices to object to the reasonableness of the fees and expenses included in any such invoice.  Any such objection must describe with particularity the items or categories of fees and expenses that are the subject of the objection and provide the specific basis

for the objection to each such item or category.  If any such objection is not resolved within ten (10) days after such objection is interposed, a hearing with respect thereto shall be conducted at the next regularly-scheduled omnibus hearing in the Cases, <u>provided</u> that the Applicable Debtors shall pay any undisputed portion of such fees, costs and expenses within fifteen (15) days of the initial presentment of such invoice.

        (c)    <u>Other Covenants</u>:  The Applicable Debtors shall maintain their cash management arrangements in a manner consistent with that described in the order governing the Debtors' cash management arrangements entered by this Court on an interim and, in part, final basis on March 19, 2013 [Docket No. 51] and the order entered or to be entered substantially contemporaneously herewith by this Court on a final basis with respect to waiver of the requirements of section 345 of the Bankruptcy Code.  The Applicable Debtors shall not use, sell or lease any material assets outside the ordinary course of business, or seek authority of this Court to do any of the foregoing, without prior consultation with the Administrative Agent and the Shared Collateral Agent at least five (5) Business Days prior to the date on which the Applicable Debtors seek the authority of this Court for such use, sale or lease.

        (d)    <u>Reporting</u>:  The Debtors shall comply with the reporting requirements set forth in Sections 5.01, 5.02 and 5.03 of the Credit Agreement and Section 5.8 of the Support and Limited Waiver Agreement, dated as of December 5, 2012, by and among the Debtors, the Administrative Agent, in its capacity as administrative agent under the Credit Agreement, the other administrative agents party thereto, and the banks and other financial institutions and entities from time to time party thereto (as amended, supplemented or otherwise modified, the "<u>Support Agreement</u>") [Docket No. 22, <u>Exhibit D</u> to <u>Exhibit A</u>].

12.    *Termination.* The Applicable Debtors' right to use the Cash Collateral pursuant to this Final Order shall automatically terminate (the date of any such termination, the "Termination Date") without further notice or court proceeding on the earliest to occur of (i) ten (10) Business Days after the date that is fifty (50) days after the Petition Date (unless such period is extended by mutual agreement of the Administrative Agent (at the direction of the "Required Consenting Lenders" under the Support Agreement) and the Debtors) if the order confirming the plan of reorganization filed by the Debtors on the Petition Date (as it may be amended in accordance with the Support Agreement, the "Plan") has not been entered,  (ii) ten (10) Business Days after the date that is fifteen (15) days after the date the order confirming the Plan is entered (unless such period is extended by mutual agreement of the Administrative Agent (at the direction of the "Required Consenting Lenders" under the Support Agreement) and the Debtors) if the Plan has not become effective in accordance with its terms and (iii) the occurrence of any of the events set forth in clauses (a) through (h) below (unless waived by the Administrative Agent and the Required Lenders) (the events set forth in clauses (a) through (h) below are collectively referred to herein as the "Termination Events"):

(a)    Failure of the Applicable Debtors to make any payment under this Final Order to the Administrative Agent, the Shared Collateral Agent or the Lenders within three (3) Business Days after such payment becomes due (other than payments required pursuant to clause (ii) of paragraph 11(a) of this Final Order, which payments shall be made as required therein);

(b)    Other than with respect to clauses (a), (c), (d), (g) and (h) of this paragraph 12, failure of the Applicable Debtors to:  (i) comply with any material provision of this Final Order; or (ii) comply with any other covenant or agreement specified in this Final Order (other

than those described in clause (i) above) in any material respect and such failure to comply with any such other covenant or agreement shall continue unremedied for five (5) Business Days following notice by the Administrative Agent of such failure;

(c)     The occurrence of any "Termination Event" under, and as such term is defined in, any Other Cash Collateral Order;

(d)     An order shall be entered reversing, amending, supplementing, staying, vacating or otherwise modifying this Final Order or any Other Cash Collateral Order without the Administrative Agent's consent;

(e)     The Applicable Debtors shall create, incur or suffer to exist any post-petition liens or security interests other than: (i) those granted pursuant to this Final Order or the Other Cash Collateral Orders; (ii) carriers', mechanics', warehousemen's, repairmen's or other similar liens arising in the ordinary course of business; (iii) pledges or deposits in connection with workers' compensation, unemployment insurance and other social security legislation; (iv) deposits to secure the payment of any post-petition statutory obligations, performance bonds and other obligations of a like nature incurred in the ordinary course of business; (v) any other junior liens or security interests that the Debtors are permitted to incur under the Credit Agreement or any other Loan Document; and (vi) any other Permitted Encumbrance (other than the Permitted Encumbrance specified in clause (e) of the definition thereof);

(f)     The Applicable Debtors shall create, incur or suffer any other claim which is *pari passu* with or senior to the 507(b) Claim of the Administrative Agent and the Lenders other than any 507(b) Claims against the Shared Collateral Debtors provided in accordance with, and as such term is defined in, each of the Other Cash Collateral Orders;

23

(g)    A filing by any Debtor of any motion, pleading, application or adversary proceeding challenging the validity, enforceability, perfection or priority of the liens securing the Obligations or asserting any other cause of action against and/or with respect to the Obligations, the prepetition liens securing such Obligations, the Administrative Agent, the Shared Collateral Agent or any of the Lenders (or if the Debtors support any such motion, pleading, application or adversary proceeding commenced by any third party); or

(h)    The occurrence of a "Termination Date" under, and as such term is defined in, the Support Agreement.

13.    *Remedies upon the Termination Date.*  The Applicable Debtors shall promptly provide notice to the Administrative Agent and the Shared Collateral Agent (with a copy to counsel for the Committee (if any) and the U.S. Trustee) of the occurrence of any Termination Event.  Upon the occurrence of the Termination Date, (a) the Adequate Protection Obligations, if any, shall become due and payable and (b) the Administrative Agent, the Shared Collateral Agent and each Lender, upon five (5) Business Days written notice to the counsel to the Debtors identified in paragraph 30 of the Interim Order and the U.S. Trustee, may (i) setoff amounts in any account of the Applicable Debtors maintained with the Administrative Agent, the Shared Collateral Agent or such Lender, respectively, to the extent necessary for payment of the Adequate Protection Obligations and (ii) exercise the rights and remedies available under the Loan Documents, this Final Order or applicable law, including without limitation, foreclosing upon and selling all or a portion of the Prepetition Collateral or Collateral granted to the Administrative Agent or the Shared Collateral Agent, respectively, in order to collect the Adequate Protection Obligations.  The automatic stay under section 362 of the Bankruptcy Code

24

is hereby deemed modified and vacated to the extent necessary to permit such actions.  In any hearing regarding any exercise of rights or remedies, the only issue that may be raised by any party in opposition thereto shall be whether, in fact, the Termination Date shall have occurred, and each of the Debtors hereby waives any right to seek relief, including without limitation, under section 105 of the Bankruptcy Code, to the extent such relief would in any way impair or restrict the rights and remedies of the Administrative Agent, the Shared Collateral Agent and the Lenders set forth in this Final Order or the Loan Documents.  The delay or failure of the Administrative Agent, the Shared Collateral Agent and the Lenders to exercise rights and remedies under the Loan Documents or this Final Order shall not constitute a waiver of their respective rights hereunder, thereunder or otherwise, unless any such waiver is pursuant to a written instrument executed in accordance with the terms of the Loan Documents.  The Administrative Agent and the Shared Collateral Agent shall be entitled to apply the payments or proceeds of the Prepetition Collateral and the Collateral in accordance with the provisions of the Loan Documents, and in no event shall the Administrative Agent, the Shared Collateral Agent or any of the Lenders be subject to the equitable doctrine of "marshaling" or any other similar doctrine with respect to any of the Prepetition Collateral, the Collateral or otherwise. Notwithstanding the occurrence of the Termination Date or anything herein, all of the rights, remedies, benefits and protections provided to the Administrative Agent, the Shared Collateral Agent and the Lenders under this Final Order shall survive the Termination Date.

14.    *Limitation on Charging Expenses against Collateral.*  Except to the extent of the Carve Out, no expenses of administration of the Cases or any future proceeding that may result therefrom, including liquidation in bankruptcy or other proceedings under the Bankruptcy Code,

shall be charged against or recovered from the Prepetition Collateral or the Collateral, the
Administrative Agent, the Shared Collateral Agent or the Lenders pursuant to sections 105(a) or
506(c) of the Bankruptcy Code or any similar principle of law or equity, without the prior written
consent of the Administrative Agent and no such consent shall be implied from any other action,
inaction, or acquiescence by the Administrative Agent, the Shared Collateral Agent or the
Lenders.

       15.    *Payments Free and Clear.*  Any and all payments or proceeds remitted to the
Administrative Agent or, if applicable, the Shared Collateral Agent on behalf of the Lenders
pursuant to the provisions of this Final Order or any subsequent order of this Court shall be
irrevocable, received free and clear of any claim, charge, assessment or other liability, including
without limitation, any such claim or charge arising out of or based on, directly or indirectly,
sections 506(c) (whether asserted or assessed by, through or on behalf of the Debtors) or 552(b)
of the Bankruptcy Code.

       16.    *Section 552(b) of the Bankruptcy Code.*  The Administrative Agent, the Shared
Collateral Agent and the Lenders shall be entitled to all of the rights and benefits of section
552(b) of the Bankruptcy Code, and the "equities of the case" exception under section 552(b) of
the Bankruptcy Code shall not apply to the Administrative Agent, the Shared Collateral Agent
and the Lenders with respect to (i) proceeds, products, offspring or profits of any of the
Prepetition Collateral, including the Cash Collateral or (ii) the extension of the Adequate
Protection Liens to cover proceeds of the Prepetition Collateral.

       17.    *Reservation of Rights of the Administrative Agent, the Shared Collateral Agent
and the Lenders.*  Notwithstanding any other provision hereof, the grant of adequate protection to

the Administrative Agent, the Shared Collateral Agent and the Lenders pursuant hereto is

without prejudice to the right of the Administrative Agent or the Shared Collateral Agent to seek

modification of the grant of adequate protection provided hereby so as to provide different or

additional adequate protection, and without prejudice to the right of the Debtors or any other

party in interest to contest any such modification. Nothing herein shall be deemed to waive,

modify or otherwise impair the respective rights of the Administrative Agent, the Shared

Collateral Agent and the Lenders under the Guarantee and Collateral Agreement, the Shared

Guarantee and Collateral Agreement or the other Loan Documents or under equity or law, and

the Administrative Agent, the Shared Collateral Agent and the Lenders expressly reserve all of

their respective rights and remedies whether now existing or hereafter arising under the

Guarantee and Collateral Agreement, the Shared Guarantee and Collateral Agreement, the Loan

Documents and/or equity or law in connection with all Termination Events and Defaults and

Events of Default (each as defined in the Credit Agreement, and whether arising prior to or after

the Petition Date). Except as expressly provided herein, nothing contained in this Final Order

(including, without limitation, the authorization to use any Cash Collateral) shall have the effect

of, or shall be construed as having the effect of, amending or waiving any covenant, term or

provision of the Credit Agreement or any other Loan Document, or any rights or remedies of the

Administrative Agent, the Shared Collateral Agent or the Lenders thereunder, including without

limitation, any right to argue that failure to strictly comply with any such covenant, term or

provision during the course of the Cases or that any use of Cash Collateral permitted or

contemplated hereby constitutes a Default or Event of Default that is not subject to cure under

section 1124 of the Bankruptcy Code or otherwise despite any consent or agreement contained herein.

18.    *Reservation of Rights.*  The entry of this Final Order and the grant of adequate protection to the Administrative Agent, the Shared Collateral Agent and the Lenders pursuant to the terms hereof shall be without prejudice to the rights of the Applicable Debtors to, following the occurrence of the Termination Date, seek authority to use the Cash Collateral without the consent of the Lenders, the Administrative Agent and the Shared Collateral Agent, and the Lenders, the Administrative Agent and the Shared Collateral Agent reserve all rights with respect to contesting any such motion or request by the Applicable Debtors or any other person.

19.    *Perfection of Adequate Protection Liens.*

(a)    The Administrative Agent and the Shared Collateral Agent are each hereby authorized, but not required, to file or record financing statements, intellectual property filings, mortgages, notices of lien or similar instruments in any jurisdiction in order to validate and perfect the liens and security interests granted to it hereunder.  Whether or not the Administrative Agent or the Shared Collateral Agent shall, in its sole discretion, choose to file such financing statements, intellectual property filings, mortgages, notices of lien or similar instruments, such liens and security interests were deemed valid, perfected, allowed, enforceable, non-avoidable and not subject to challenge, dispute or subordination as of the date of entry of the Interim Order and, shall continue to be deemed valid, perfected, allowed, enforceable, non-avoidable and not subject to challenge, dispute or subordination.  If the Administrative Agent or the Shared Collateral Agent determines to file any financing statements, notice of liens or similar instruments, the Debtors will cooperate and assist in any such filings as reasonably requested by

28

the Administrative Agent or the Shared Collateral Agent, and the automatic stay shall be modified to allow such filings.

(b)    A certified copy of this Final Order may, in the discretion of the Administrative Agent and the Shared Collateral Agent, as applicable, be filed with or recorded in filing or recording offices in addition to or in lieu of such financing statements, mortgages, notices of lien or similar instruments, and all filing offices are hereby authorized to accept such certified copy of this Final Order for filing and recording; provided, however, that the Debtors shall reimburse the Administrative Agent, the Shared Collateral Agent or their respective designee for the payment of any stamp, intangibles, recording or similar tax.

(c)    The Debtors shall execute and deliver to the Administrative Agent and the Shared Collateral Agent all such agreements, financing statements, instruments and other documents as the Administrative Agent or the Shared Collateral Agent may reasonably request to evidence, confirm, validate or perfect the Adequate Protection Liens.

(d)    Effective upon entry of this Final Order, any provision of any lease or other license, contract or other agreement that requires (i) the consent or approval of one or more landlords or other parties or (ii) the payment of any fees or obligations to any governmental entity, in order for any Debtor to pledge, grant, sell, assign, or otherwise transfer any such leasehold interest, or the proceeds thereof, or other Collateral related thereto, is hereby deemed to be inconsistent with the applicable provisions of the Bankruptcy Code.  Any such provision shall have no force and effect with respect to the granting of Adequate Protection Liens on such leasehold interest or the proceeds of any assignment and/or sale thereof by any Debtor in favor of

the Administrative Agent or the Shared Collateral Agent and the Lenders in accordance with the terms of the Loan Documents or this Final Order.

20.     *Preservation of Rights Granted Under this Final Order.*

(a)     Except as expressly provided in this Final Order, no claim or lien having a priority senior to or *pari passu* with those granted by this Final Order to the Administrative Agent, the Shared Collateral Agent and the Lenders shall be granted or allowed, and the Adequate Protection Liens shall not be subject or junior to any lien or security interest that is avoided and preserved for the benefit of the Applicable Debtors' estates under section 551 of the Bankruptcy Code or subordinated to or made *pari passu* with any other lien or security interest, whether under section 364(d) of the Bankruptcy Code or otherwise.

(b)     Notwithstanding any order dismissing any of the Cases under section 1112 of the Bankruptcy Code or otherwise entered at any time, (x) the 507(b) Claims, the other administrative claims granted pursuant to this Final Order and the Adequate Protection Liens shall continue in full force and effect and shall maintain their priorities as provided in this Final Order until all Adequate Protection Obligations shall have been paid and satisfied in full (and such 507(b) Claims, the other administrative claims granted pursuant to this Final Order and the Adequate Protection Liens shall, notwithstanding such dismissal, remain binding on all persons); and (y) this Court shall retain jurisdiction, notwithstanding such dismissal, for the purposes of enforcing the claims, liens and security interests referred to in clause (x) above.

(c)     If any or all of the provisions of this Final Order are hereafter reversed, modified, vacated or stayed, such reversal, stay, modification or vacatur shall not affect: (i) the validity, priority or enforceability of any Adequate Protection Obligations incurred prior to the

actual receipt of written notice by the Administrative Agent and the Shared Collateral Agent of the effective date of such reversal, stay, modification or vacatur; or (ii) the validity, priority or enforceability of the Adequate Protection Liens. Notwithstanding any such reversal, stay, modification or vacatur, any use of the Prepetition Collateral (including the Cash Collateral) or any Adequate Protection Obligations incurred by the Applicable Debtors hereunder, or Adequate Protection Liens granted hereby, as the case may be, prior to the actual receipt of written notice by the Administrative Agent and the Shared Collateral Agent of the effective date of such reversal, stay, modification or vacatur shall be governed in all respects by the original provisions of this Final Order, and the Administrative Agent, the Shared Collateral Agent and the Lenders shall be entitled to all of the rights, remedies, privileges and benefits granted in section 363(m) of the Bankruptcy Code with respect to all uses of the Prepetition Collateral (including the Cash Collateral), all Adequate Protection Obligations and all Adequate Protection Liens.

(d)      The adequate protection payments made pursuant to this Final Order shall not be subject to counterclaim, setoff, subordination, recharacterization, defense or avoidance in the Cases or any subsequent chapter 7 cases (other than a defense that the payment has actually been made).

(e)      Except as expressly provided in this Final Order, the Adequate Protection Obligations, the 507(b) Claims and all other rights and remedies of the Administrative Agent, the Shared Collateral Agent and the Lenders granted by the provisions of this Final Order shall survive, and shall not be modified, impaired or discharged by (i) the entry of an order converting any of the Cases to a case under chapter 7 of the Bankruptcy Code, dismissing any of the Cases or by any other act or omission, or (ii) the entry of an order confirming a plan of reorganization

in any of the Cases (other than the Plan) and, pursuant to section 1141(d)(4) of the Bankruptcy Code, the Debtors have waived any discharge as to any remaining Adequate Protection Obligations. The terms and provisions of this Final Order shall continue in the Cases, in any successor cases if the Cases cease to be jointly administered, or in any superseding chapter 7 cases under the Bankruptcy Code, and the Adequate Protection Liens, the Section 507(b) Claims, the other administrative claims granted pursuant to this Final Order, and all other rights and remedies of the Administrative Agent, the Shared Collateral Agent and the Lenders granted by the provisions of this Final Order shall continue in full force and effect until all Adequate Protection Obligations are indefeasibly paid in full in cash, except as otherwise provided for in the Plan.

21.    *Effect of Stipulations on Third Parties.* As a result of the Debtors' review of the Loan Documents and the facts related thereto, the Debtors have made certain agreements and acknowledgments as set forth in paragraph 5 above and shall have no right to file a complaint pursuant to Bankruptcy Rule 7001 or otherwise, or any other pleading asserting a claim or cause of action arising out of or related to the Loan Documents or any transactions or course of conduct related thereto. The stipulations and admissions contained in this Final Order, including without limitation, in paragraph 5 of this Final Order, shall be binding upon the Debtors and any successor thereto in all circumstances. The stipulations and admissions contained in this Final Order, including without limitation, in paragraph 5 of this Final Order, shall be binding upon all other parties in interest, including any chapter 7 or chapter 11 trustee appointed or elected for any of the Debtors (a "Trustee"), unless (a) the Committee (if any) or any other party in interest (including any Trustee), in each case, with requisite standing, has duly filed an adversary

32

proceeding (subject to the limitations contained herein, including without limitation, in

paragraph 22) challenging the validity, enforceability, priority or extent of the Obligations or the

liens on the Prepetition Collateral securing the Obligations or otherwise asserting or prosecuting

any Avoidance Actions or any other claims, counterclaims or causes of action, objections,

contests or defenses (collectively, the "Claims and Defenses") against the Administrative Agent,

the Shared Collateral Agent or any of the Lenders or their respective agents, affiliates,

subsidiaries, directors, officers, representatives, attorneys or advisors in connection with any

matter related to the Obligations or the Prepetition Collateral by no later than the date that is the

earlier of (x) the later of (i) in the case of any such adversary proceeding filed by a party in

interest with requisite standing other than the Committee, seventy-five (75) days after the date of

entry of the Interim Order, (ii) in the case of any such adversary proceeding filed by the

Committee (if any), sixty (60) days after the appointment of the Committee (if any), and (iii) any

such later date agreed to in writing by the Administrative Agent in its sole and absolute

discretion and (y) the last day for filing objections to confirmation of the Plan (the time period

established by the earlier of the foregoing clauses (x) and (y), the "Challenge Period") and (b) an

order is entered by a court of competent jurisdiction and becomes final and non-appealable in

favor of the plaintiff sustaining any such challenge or claim in any such duly filed adversary

proceeding; provided that, as to the Debtors, all such Claims and Defenses are hereby

irrevocably waived and relinquished as of the Petition Date.  If no such adversary proceeding is

timely filed prior to the expiration of the Challenge Period, without further order of this Court;

(x) the Obligations shall constitute allowed claims, not subject to counterclaim, setoff,

subordination, recharacterization, defense or avoidance, for all purposes in the Cases and any

33

subsequent chapter 7 case; (y) the Administrative Agent's and the Shared Collateral Agent's liens on the Prepetition Collateral shall be deemed to have been, as of the Petition Date, and to be, legal, valid, binding, perfected and of the priority specified in paragraph 5(d), not subject to defense, counterclaim, recharacterization, subordination or avoidance; and (z) the Obligations, the Administrative Agent's and the Shared Collateral Agent's  liens on the Prepetition Collateral and the Lenders shall not be subject to any other or further challenge by the Committee (if any) or any other party in interest, and any such Committee or party in interest shall be enjoined from seeking to exercise the rights of the Debtors' estates, including without limitation, any successor thereto (including, without limitation, any estate representative or a Trustee, whether such Trustee is appointed or elected prior to or following the expiration of the Challenge Period).  If any such adversary proceeding is timely filed prior to the expiration of the Challenge Period, the stipulations and admissions contained in this Final Order, including without limitation, in paragraph 5 of this Final Order, shall nonetheless remain binding and preclusive (as provided in the third sentence of this paragraph) on any Committee and any other Person, including any Trustee, except as to any such findings and admissions that were successfully challenged in such adversary proceeding.  Nothing in this Final Order vests or confers on any Person, including a Committee (if any) or Trustee, standing or authority to pursue any cause of action belonging to the Debtors or their estates.

22.     *Limitation on Use of Collateral.*  The Applicable Debtors shall use the proceeds of the Prepetition Collateral (including the Cash Collateral) solely as provided in this Final Order.  Notwithstanding anything herein or in any other order of this Court to the contrary, no Collateral, Prepetition Collateral (including the Cash Collateral), the Carve Out or any other

34

assets of the Debtors' estates now or hereafter acquired may be used to: (a) object, contest or raise any defense to, the validity, perfection, priority, extent or enforceability of any amount due under the Loan Documents, or the liens or claims granted under this Final Order or the Loan Documents; (b) assert any Claims and Defenses against the Administrative Agent, the Shared Collateral Agent or the Lenders or their respective agents, affiliates, subsidiaries, directors, officers, representatives, attorneys or advisors; (c) seek to modify any of the rights granted to the Administrative Agent, the Shared Collateral Agent or the Lenders hereunder, or (d) pay any amount on account of any claims arising prior to the Petition Date unless such payments are approved by an order of this Court without objection from the Administrative Agent, provided that, notwithstanding anything to the contrary herein, no more than an aggregate of $50,000 of the Prepetition Collateral (including the Cash Collateral), the Collateral or the Carve Out may be used by any Committee to investigate the validity, enforceability or priority of the Obligations or the Administrative Agent's or Shared Collateral Agent's liens on the Prepetition Collateral or investigate any Claims and Defenses or other causes action against the Administrative Agent, the Shared Collateral Agent or any of the Lenders.

23.    *Asset Sales.*  The proceeds of any sale, assignment or disposition of any Prepetition Collateral or Collateral under sections 363 or 365 of the Bankruptcy Code shall be applied against the Obligations in accordance with the terms of the Credit Agreement and the other Loan Documents and, with respect to any Prepetition Collateral or Collateral that is Shared Collateral, in accordance with the terms of the Shared Guarantee and Collateral Agreement and the Intercreditor Agreement.

24.    *Binding Effect; Successors and Assigns.*  The provisions of this Final Order, including all findings herein, shall be binding upon all parties in interest in the Cases, including without limitation, the Administrative Agent, the Shared Collateral Agent, the Lenders, any Committee and the Debtors and their respective successors and assigns (including any Trustee hereinafter appointed or elected for the estates of any of the Debtors, an examiner appointed pursuant to section 1104 of the Bankruptcy Code, or any other fiduciary appointed as a legal representative of any of the Debtors or with respect to the property of the estate of any of the Debtors) and shall inure to the benefit of the Administrative Agent, the Shared Collateral Agent, the Lenders and the Debtors and their respective successors and assigns, <u>provided</u> that, except to the extent expressly set forth in this Final Order, the Administrative Agent, the Shared Collateral Agent and the Lenders shall have no obligation to permit the use of the Prepetition Collateral (including the Cash Collateral) or extend any financing to any Trustee or similar responsible person appointed for the estate of any Debtor.

25.    *Limitation of Liability.*  In permitting the use of the Prepetition Collateral (including the Cash Collateral) or in exercising any rights or remedies as and when permitted pursuant to this Final Order, the Administrative Agent, the Shared Collateral Agent and the Lenders shall not be deemed to be in control of the operations of the Debtors or to be acting as a "responsible person" or "owner or operator" with respect to the operation or management of the Debtors (as such terms, or any similar terms, are used in the United States Comprehensive Environmental Response, Compensation and Liability Act, 42 U.S.C. §§ 9601 et seq. as amended, or any similar federal or state statute).  Furthermore, nothing in this Final Order shall in any way be construed or interpreted to impose or allow the imposition upon the

36

Administrative Agent, the Shared Collateral Agent or the Lenders of any liability for any claims arising from the prepetition or post-petition activities of any of the Debtors and their respective affiliates (as defined in section 101(2) of the Bankruptcy Code).

26.    *No Impact on Certain Contracts/Transactions.*  No rights of any Person under sections 555, 556, 559, 560 and 561 of the Bankruptcy Code shall be affected by the entry of this Final Order as to any contract or transaction of the kind listed in such sections of the Bankruptcy Code.

27.    *Effectiveness.*  This Final Order shall constitute findings of fact and conclusions of law and shall take effect immediately upon entry hereof, and there shall be no stay of execution of effectiveness of this Final Order.  To the extent that any finding of fact shall be determined to be a conclusion of law it shall be so deemed and vice versa.

28.    *Controlling Effects of this Final Order.*  To the extent any provision of this Final Order conflicts or is inconsistent with any provision of the Motion, the provisions of this Final Order shall control.

29.    *The Interim Order.*  Except as specifically amended, supplemented or otherwise modified by this Final Order, all of the provisions of the Interim Order shall remain in full force and effect and are hereby ratified by this Final Order. In the event of any inconsistency between the provisions of this Final Order and the Interim Order, the provisions of this Final Order shall govern.

30.    *Proofs of Claim.*  Notwithstanding anything herein to the contrary or in any other order of this Court, none of the Administrative Agent, the Shared Collateral Agent or any other Lender will be required to file proofs of claim in any of the Cases or successor cases, and the

37

Debtors' stipulations in paragraph 5 herein shall be deemed to constitute a timely filed proof of claim. Any order entered by this Court in relation to the establishment of a bar date for any claim (including, without limitation administrative claims) in any of the Cases or successor Cases shall not apply to the Administrative Agent and the Lenders with respect to the Obligations.

31.    *Jurisdiction.*  This Court shall retain jurisdiction to enforce the terms of this Final Order and to adjudicate any and all matters arising from or related to the interpretation or implementation of this Final Order.

Dated:    April __, 2013
         Wilmington, Delaware

_____
The Honorable Kevin Gross
Chief United States Bankruptcy Judge